UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| DINA ANN COMOLLI, CHRISTINE HOLLIDAY, and SANDRA WILLIAMS,<br><br>Plaintiffs,<br><br>- against-<br><br>HUNTINGTON LEARNING CENTERS, INC., HUNTINGTON LEARNING CORPORATION, HUNTINGTON MARK, LLC, and HUNTINGTON ADVERTISING FUND, INC.,<br><br>Defendants. | Civil Action No.: 15-CV-1204 (SAS) |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

PORZIO, BROMBERG & NEWMAN, P.C.
156 WEST 56TH STREET, SUITE 803
NEW YORK, NY 10019
TEL: 212-265-6888
*ATTORNEYS FOR DEFENDANTS*
*HUNTINGTON LEARNING CENTERS, INC., HUNTINGTON LEARNING CORPORATION, HUNTINGTON MARK, LLC,*

·

3011630

## TABLE OF CONTENTS

Page

INTRODUCTION ..................................................................................................................... 1
STATEMENT OF ALLEGED FACTS ..................................................................................... 3
ARGUMENT ............................................................................................................................. 4
    I.    STANDARD OF REVIEW ........................................................................................ 4
    II.   THE COMPLAINT IS TIME BARRED. ................................................................... 5
   III.  NEW YORK CIVIL RIGHTS LAW § 51 DOES NOT APPLY TO
         PUBLICATIONS (OR BROADCASTS) OUTSIDE OF NEW YORK. ........................ 8

3011629

# TABLE OF AUTHORITIES

Page(s)

**CASES**

*Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986 (N.D. Ill. 2003) .......................... 4

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................................................................ 4

*Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955 (2007) ............................................................... 4, 5

*Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH &
    Co.*, 150 F.Supp.2d 566 (S.D.N.Y. 2001) ............................................................................... 5, 9

*Gregoire v. G.P. Putnam's Sons*, 298 N.Y. 119 (1948) .................................................................. 6

*Khaury v. Playboy Publications, Inc.*, 430 F.Supp.1342 (S.D.N.Y. 1977) .................................. 6, 7

*Landow v. Wachovia Securities, LLC*, 966 F.Supp.2d 106 (2013) ............................................... 4, 9

*Nussenzweig v. diCorcia*, 9 N.Y.3d 184 (2007) .............................................................................. 7

**STATUTES**

Civil Rights Law §§ 50-51 ................................................................................................................ 7

New York Civil Rights Law § 51 ................................................................................ 1, 2, 4, 5, 6, 7, 8

**RULES**

*Fed. R. Civ. P.* 12(b)(6) ................................................................................................................ 1, 4

N.Y.C.P.L.R. § 215(3) ............................................................................................................. 1, 5, 8

3011629

## INTRODUCTION

Defendants Huntington Learning Centers, Inc., Huntington Learning Corporation, and Huntington Mark, LLC (collectively "Huntington"), respectfully submit this memorandum of law in support of its motion for an order dismissing the Complaint filed by Plaintiffs Dina Ann Comolli, Christine Holliday, and Sandra Williams (collectively "Plaintiffs" or "Actors"), pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, on the grounds that Plaintiffs' Complaint fails to state a claim upon which relief may be granted as their claims, brought solely under New York Civil Rights Law § 51, are time-barred by the applicable one-year statute of limitations, N.Y.C.P.L.R. § 215(3).

According to the Complaint filed in this matter before the New York Supreme Court on January 20, 2015, Plaintiffs are three actresses who participated in a commercial shoot for Huntington Learning Centers in December 2011.  They were paid $500 each for their one day of work.  Now, more than three years later, they have sued Huntington and some of its affiliates, claiming that airing the commercial after 2012 and outside of New York violates their statutory right of privacy under New York Civil Rights Law § 51.  They seek compensatory and exemplary damages, and injunctive relief.

Under New York law, however, the statute of limitations for bringing claims for violations of the state's statutory right of privacy is one year.  Moreover, New York cases applying § 51 uniformly hold that the claim accrues on the date of the first publication of the offending material, not from the date of discovery by the plaintiff.  Because the Complaint alleges that the commercial first aired in 2012, the Complaint is untimely and should be dismissed.

Moreover, New York law is clear that violations of privacy under § 51 are only actionable to the extent that they occur within New York. To the extent that the Complaint attempts to state claims for damages for a § 51 violation of privacy resulting from broadcasts of the Huntington commercial outside of New York, such claims should also be dismissed.

## STATEMENT OF ALLEGED FACTS

Defendants Huntington Learning Centers, Inc., Huntington Learning Corporation, and Huntington Mark, LLC (collectively, "Huntington") operate learning centers around the country. (See Complaint, ¶¶ 7-10, attached to the Declaration of Thomas O. Johnston, Esq. (hereinafter "Johnston Decl.") at Exhibit 2)   Plaintiffs Dina Ann Comolli, Christine Holliday, and Sandra Williams (collectively, the "Plaintiffs" or "Actors") are professional actors who appeared in a television commercial to advertise Huntington's services that they allege aired more than 9,000 times in New York and throughout the country. (*Id.* at ¶¶ 1, 4-6)

The commercial was shot on or around December 1, 2011, in Brooklyn, New York. The Actors were paid $500 each for their appearance in the commercial. (*Id.* at ¶ 2)

The Actors admit that they signed "documents" in connection with the commercial shoot, but allege that they were not given copies of any such documents. (*Id.* at ¶ 15)   The Actors further admit that they consented to the commercial airing on local television in the New York area during 2012, but allege that they would not have given their consent for the commercial to air after 2012 or on television outside of the New York area. (*Id.*)   The Complaint also alleges that Plaintiff Holliday "would have joined the [actors'] union if she had known she would be part of a long running national television commercial." (*Id.*)

The Actors allege that Huntington "has continuously used plaintiffs' images and voices in the Commercial to advertise its brand and services in New York ***and nationwide*** from 2013 to present." (*Id.* at ¶ 17 (emphasis added))   The Complaint identifies the markets outside of New York where the Actors allege the commercial has aired, including:

> . . . Albuquerque, NM, Boise, ID, Boston, MA, Champaign, IL, Charlotte, NC, Chicago, IL, Cincinnati, OH, Cleveland, OH, Des Moines, IA,

3

>   Jacksonville, FL, Knoxville, TN, Miami, FL, Minneapolis, MN, Mobile, AL, Montgomery, AL, Nashville, TN, Omaha, NE, Philadelphia, PA, Pittsburgh, PA, Reno, NV, Rochester, MN, Rockford, IL, San Antonio, TX, Seattle, WA, Tulsa, OK, and Washington, DC.

(*Id.*)   The Complaint also alleges that "one of the plaintiffs was informed that she lost a well paying television commercial job for another client because she was overexposed by the frequent, nationwide airing of the [Huntington] Commercial on television."  (*Id.* at ¶ 18)

Based on these facts, the Actors seek injunctive relief and compensatory and exemplary damages under New York Civil Rights Law. § 51, which creates a statutory right of privacy. (*Id.* at ¶¶ 22-27)  Their Complaint was filed in New York Supreme Court, New York County, on January 20, 2015. (*See* Johnston Decl., Ex. 2, p. 1)  Huntington timely removed the case to this court on February 19, 2015, and now moves to dismiss the Complaint.

## ARGUMENT

### I.   STANDARD OF REVIEW

*Fed. R. Civ. P.* 12(b)(6) establishes the grounds for a motion to dismiss a complaint. In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must allege sufficient facts demonstrating that the claimed relief is not merely "conceivable," but actually "plausible." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct 1955, 1959-60, 66 (2007) (*quoting Asahi Glass Co. v. Pentech Pharms., Inc.*, 289 F. Supp. 2d 986, 995 (N.D. Ill. 2003) ("[S]ome threshold of plausibility must be crossed at the outset before [a case] should be permitted to go into its inevitably costly and protracted discovery phase"). The plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully." *Landow v. Wachovia Securities, LLC*, 966 F.Supp.2d 106 (2013) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Moreover, while a complaint does not need detailed factual allegations, a plaintiff's obligation to provide the "grounds" of his "entitlement to relief" requires more than labels and conclusions, and a

formulaic recitation of the elements of a cause of action will not do. *Twombly*, 127 S.Ct at 1964-65. (citations omitted). "Factual allegations must be enough to raise a right to relief above speculative level." *Id.*

Here, Plaintiffs' Complaint should be dismissed as the allegations, even if accepted as true, provide no basis upon which relief can be granted because the Complaint was filed beyond the one-year statute of limitations for claims brought under New York Civil Rights Law § 51.

## II.   THE COMPLAINT IS TIME BARRED

The sole cause of action in the Actors' Complaint is a violation of New York's statute providing a right of privacy, New York Civil Rights Law § 51.   Under New York law, the statute of limitations for claims alleging violations of the plaintiff's statutory right of privacy is one year.   N.Y.C.P.L.R. § 215(3).   The Complaint was filed on January 20, 2015.   Thus, if the Actors' cause of action accrued before January 20, 2014, the Complaint is time-barred.   The Complaint itself alleges that the offending commercial for Huntington began airing on television in 2012.

Under a long string of New York cases, the rule in New York is clear that violations of the statutory right of privacy accrue immediately when the offending material is ***first published***. For example, in *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.*, 150 F.Supp.2d 566 (S.D.N.Y. 2001), when an American actor sued a German theatrical company alleging that it had violated his privacy rights by selling CDs of a German version of an American musical he had appeared in, the Court held that the claim accrued on the date the CDs were first offered for sale in New York. *Id.* at 572-73. Indeed, the *Cuccioli* court explicitly rejected the argument that the violations were of a continuing nature and hence not subject to the one-year statute of limitations:

> Plaintiff concedes that the statute of limitations on Section 51 claims is one year and that this action was commenced two years after defendant began to produce merchandise bearing the allegedly offending logo. He nevertheless argues that defendants' actions have been of a continuing nature and that the statute first began to run from the most recent abuse, thus saving the entirety of his claim. The argument is without merit. Under New York law, a statute of limitations begins to run when a claim accrues. A tort claim accrues upon the occurrence of the last event necessary to give rise to a claim, generally at the time of injury. In defamation and invasion of privacy cases, this almost invariably occurs at first publication – generally interpreted as when the publication first goes on sale to the public. And the New York Court of Appeals, in adopting the single publication rule, long ago rejected the proposition advanced by plaintiff, viz. that each subsequent publication or distribution of challenged material sets the statute running anew.

*Id.* at 572-573, citing *Gregoire v. G.P. Putnam's Sons*, 298 N.Y. 119 (1948).

In *Khaury v. Playboy Publications, Inc.*, 430 F.Supp.1342 (S.D.N.Y. 1977), the court reached a similar result. The entertainer known as Tiny Tim sued Playboy for defamation and invasion of privacy resulting from an article entitled "Miss Vicki" in *Oui* magazine. *Id.* at 1343. He filed his complaint on September 22, 1976. *Id.* The defendants moved for summary judgment based on the undisputed evidence that the magazine, though nominally the October 1975 issue, had actually been delivered to retailers for sale no later than September 7, 1975. *Id.* In granting the motion and dismissing the case, the court applied the "single publication" rule as a matter of first impression to a § 51 privacy claim, explaining its rationale as follows:

> An analysis of the issue is rooted in the purpose behind the single publication rule. This rule was adopted in recognition of the vast multiplicity of suits which could arise from mass publications which transcend a variety of medias and state lines, and the attendant problems of choice of law, indefinite liability, and endless tolling of the statute of limitations…. It would appear that the rule, then, is not aimed at the particular tort alleged, but rather at the manner in which the tort is executed. If the wrong arises out of a mass communication, then whether it sounds in defamation or statutory invasion of privacy, the same considerations should apply…. I therefore believe that were the New York courts faced with the issue, they would follow the lead of these other jurisdictions and, in recognition of the aims of the single publication rule,

3011629

>apply the rule to a claim of violation of Section 51 founded upon a mass publication. This being the case, plaintiff's claim is time-barred.

*Id.* at 1345-46.

Finally, in *Nussenzweig v. diCorcia*, 9 N.Y.3d 184 (2007), the New York Court of Appeals applied the single publication rule to a case involving an argument that the discovery rule might toll the statute of limitations for New York Civil Rights Law § 51 right of privacy claims. In *Nussenzweig*, the defendant, diCorcia, an artist-photographer, had taken candid photographs of random individuals walking through Times Square between 1999 and 2001. *Id.* at 187. In the fall of 2001, diCorcia exhibited the photographs at a gallery and, in conjunction with the exhibition, published a catalogue that included an image of Nussenzweig. *Id.* It was not until four years later, however, that Nussenzweig learned of the publication of his image in the catalogue, and he shortly thereafter filed suit, alleging a violation of § 51 of the New York Civil Rights Law. *Id.* The trial court granted the defendant's motion for summary judgment and dismissed the complaint "on the ground that any claim of a Civil Rights Law §§ 50-51 violation had to have been commenced within one year of the initial display of the photograph, not one year from plaintiff's discovery of the display as he argued." *Id.* The Court of Appeals affirmed, stating unequivocally that "[b]ecause the publishing event giving rise to plaintiff's right of privacy claims first occurred no later than the fall of 2001, more than one year before he commenced suit, plaintiff's claims are time-barred." *Id.* at 188. In short, the Court of Appeals held that, under New York law, the "single publication" rule, and not the discovery rule, governed application of the statute of limitations to right of privacy actions. *Id.*

Here, the Actors who appeared in the December 2011 Huntington commercial at issue admit that the ad was first broadcast in 2012. That was the date of the first publication of the commercial, and that date triggered the running of the one-year statute of limitations,

7

N.Y.C.P.L.R. § 215(3) applicable to claims for violations of New York's statutory right of privacy. Because the Actors did not file their lawsuit until January 2015, nearly three years later, their claims are time-barred.

### III. NEW YORK CIVIL RIGHTS LAW § 51 DOES NOT APPLY TO PUBLICATIONS (OR BROADCASTS) OUTSIDE OF NEW YORK

Besides being time-barred, a second deficiency of the Complaint arises from its focus on broadcasts of the Huntington commercial featuring the Actors outside of the State of New York. Indeed, the Complaint's central grievance is that what they thought was a local commercial for local airing was instead part of a national advertising campaign. For instance, the Complaint alleges that in pre-suit correspondence one of the Plaintiffs demanded that Huntington's co-founder and CEO pay "compensation 'commensurate with a long running, *national* advertisement." (Johnston Decl., Ex. 2, ¶ 19 (emphasis added))

New York law is clear, however, that claims under New York Civil Rights Law § 51 for violation of privacy only apply within New York state, and do not apply to publications (or broadcasts) outside of New York. Indeed, the plain language of the statute states that it applies only to "[a]ny person whose name, portrait, picture or voice is used *within this state* for advertising purposes." *New York Civil Rights Law* § 51 (emphasis added). In *Cuccioli*, this Court dismissed the claim of an actor against the German theatrical company for out-of-state sales of CDs of a German version of an American musical in which he had appeared and stated that:

> The Legislature . . . created a claim in favor only of one whose likeness had been used for prohibited purposes "within this state." In consequence, as New York courts have uniformly held, the substantive law of New York is that one may recover for trade or commercial use of one's likeness only to the extent that the use occurs in New York . . . out-of-state uses of plaintiff's likeness for trade or advertising purposes are not actionable

> under New York law. To the extent that plaintiff seeks damages based on such uses, his claim must be dismissed.

150 F.Supp.2d at 575.

A similar result is necessary here. The Actors' claims should be dismissed because they seek damages for broadcasts of the Huntington commercial outside of New York.

Dated this 26th day of February, 2015.

PORZIO, BROMBERG & NEWMAN, P.C.

s/ Thomas O. Johnston
Thomas O. Johnston
156 West 56 Street, Suite 803
New York, New York 10019-3800
Tel: 212-265-6888

*Attorneys for Defendants, HUNTINGTON LEARNING CENTERS, INC. , HUNTINGTON LEARNING CORPORATION, and HUNTINGTON MARK, LLC*

Of Counsel:

Andrew P. Beilfuss
Paul D. Bauer
QUARLES & BRADY LLP
411 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Tel: 414-277-5111

3011629