UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- X

DINA ANN COMOLLI, CHRISTINE
HOLLIDAY, and SANDRA WILLIAMS,

                Plaintiffs,

    - against -

HUNTINGTON LEARNING CENTERS,
INC., HUNTINGTON LEARNING
CORPORATION, HUNTINGTON MARK,
LLC, and HUNTINGTON ADVERTISING
FUND, INC.,

                Defendants.

------------------------------------------------------------- X

**OPINION AND ORDER**

**15-cv-1204 (SAS)**

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 6/25/15

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## I.  INTRODUCTION

        Plaintiffs Dina Ann Comolli, Christine Holliday, and Sandra Williams

bring this action seeking both damages and injunctive relief from defendants

Huntington Learning Centers, Inc. ("Huntington Centers"), Huntington Learning

Corporation, Huntington Mark, LLC, and Huntington Advertising Fund, Inc.

(collectively "Huntington").  Plaintiffs assert causes of action for invasion of

privacy and fraudulent inducement.  Huntington now moves to dismiss all claims

under Rule 12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons set

forth below, Huntington's motion is GRANTED in part and DENIED in part.

## II.   BACKGROUND

### A.   Facts[1]

Plaintiffs are three professional actors, all residing in New York.[2]  In late 2011, Huntington recorded a commercial in Brooklyn, New York, featuring plaintiffs (the "Commercial").[3]  Huntington paid each plaintiff five hundred dollars for her participation in the Commercial.[4]  While each plaintiff recalls signing a release granting Huntington the rights to air the Commercial for a limited period of time, no plaintiff recalls the precise terms of her respective agreement.[5]  Plaintiffs initially believed that they had signed a one-year limited release granting Huntington the right to air the Commercial in the local New York market for all of 2012, but each began to doubt the accuracy of her recollection when she realized that the Commercial was still airing in November 2013.[6]

---

[1]     The facts below are drawn from the First Amended Complaint ("Compl.").

[2]     *See id.* ¶¶ 5-7.

[3]     *See id.* ¶ 14.

[4]     *See id.* ¶ 16.

[5]     *See id.* ¶¶ 16, 18.

[6]     *See id.* ¶¶ 16, 18-21.

2

In late 2013, plaintiffs tried to obtain copies of their releases.[7]  Neither Comolli's nor Holliday's respective agents, nor the production company for the Commercial, could locate any documents related to the Commercial.[8]  In the absence of documentary proof, and despite their recollections, plaintiffs concluded that they must have signed two-year releases and temporarily abandoned their attempts to locate copies of the releases.[9]

After discovering that the Commercial was still airing in May 2014, plaintiffs renewed their efforts to obtain copies of the releases.[10]  Comolli called Huntington Centers in June 2014, eventually speaking to Laura Gehringer, Executive Director of Marketing and Advertising.[11]  On June 19, 2014, Gehringer left a voicemail on Comolli's phone, reading language from what Gehringer claimed were "complete releases" that purportedly granted Huntington the right to air the Commercial in perpetuity.[12]  Despite multiple requests from plaintiffs and

---

[7]     *See id.* ¶¶ 18-20.

[8]     *See id.* ¶¶ 19-20.

[9]     *See id.* ¶ 21.

[10]    *See id.* ¶ 22.

[11]    *See id.* ¶ 23.

[12]    *See id.* ¶ 24.

their attorney, Huntington never sent copies of the signed releases to plaintiffs.[13]

The Commercial is still airing in New York and multiple other markets across the country.[14]  On February 10, 2014, the Commercial aired on a new television station in New York for the first time.[15]  Plaintiffs filed suit on January 20, 2015.[16]

Plaintiffs seek damages and injunctive relief from all defendants for airing the Commercial without plaintiffs' consent.[17]  Additionally, plaintiffs assert a cause of action for fraudulent inducement against Huntington Centers.[18]  Plaintiffs contend that Gehringer lied in her June 19, 2014 voicemail about the existence of the "complete releases."[19]  Plaintiffs further allege that Gehringer's representations caused them to delay filing this suit.[20]  Instead of filing in June 2014, plaintiffs chose to plead their case directly to Eileen Huntington, the Chief

---

[13]     *See id.* ¶¶ 25, 27-29.

[14]     *See id.* ¶ 31.

[15]     *See id.*

[16]     *See id.*

[17]     *See id.* ¶¶ 33-39.

[18]     *See id.* ¶¶ 40-44.

[19]     *See id.* ¶ 29.

[20]     *See id.* ¶ 26.

Executive Officer of Huntington Centers, by sending a letter to her on June 27, 2014.[21]

### B.    Procedural History

Plaintiffs originally filed suit in the Supreme Court of the State of New York, County of New York.[22]  Huntington timely removed the action to federal court pursuant to section 1441 of Title 28 of the United States Code, based on diversity jurisdiction under section 1332.[23]

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

In deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must "accept[] all factual allegations in the complaint as true and draw[] all reasonable inferences in the plaintiff's favor."[24]  The court evaluates the sufficiency of the complaint under the "two-pronged approach" set forth by the Supreme Court in *Ashcroft v. Iqbal*.[25]  Under the first prong, a court may "begin by

---

[21]    *See id.* ¶¶ 8, 26.

[22]    *See* Notice of Removal to United States District Court From New York State Court, New York County, Index No. 150604/2015 ("Notice of Removal") ¶ 1.

[23]    *See id.* ¶ 2.

[24]    *Grant v. County of Erie*, 542 Fed. App'x 21, 23 (2d Cir. 2013).

[25]    *See* 556 U.S. 662, 678-79 (2009).

identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth."[26]  For example, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."[27]  Under the second prong of *Iqbal*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief."[28]  A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[29]  Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully."[30]  Additionally, Federal Rule of Civil Procedure 9(b) requires that the circumstances constituting fraud be alleged with particularity, although "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally."

When deciding a motion to dismiss, "a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and

---

[26]     *Id.* at 679.

[27]     *Id.* at 678 (citation omitted).

[28]     *Id.* at 679.

[29]     *Id.* at 678 (citation omitted).

[30]     *Id.* (quotation marks omitted).

documents incorporated by reference in the complaint."[31]  A court may also consider a document that is not incorporated by reference "where the complaint 'relies heavily upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[32]  However, even if a document is integral to the complaint, "'it must be clear on the record that no dispute exists regarding the authenticity or accuracy of the document.'"[33]

### B.    Leave to Amend

Federal Rule of Civil Procedure 15(a)(2) provides that, other than amendments as a matter of course, "a party may amend [its pleading] only by leave of court or by written consent of the adverse party."[34]  Although "[t]he Court should freely give leave when justice so requires,"[35] it is "within the sound discretion of the district court to grant or deny leave to amend."[36]  When a motion

---

[31]    *DiFolco v. MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

[32]    *Id.* (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)).

[33]    *Id.* (quoting *Faulkner v. Beer*, 463 F.3d 130, 134 (2d Cir. 2006)).

[34]    *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (citation and quotation marks omitted).

[35]    Fed. R. Civ. P. 15(a)(2).

[36]    *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007) (citation omitted).

to dismiss is granted, "'[i]t is the usual practice . . . to allow leave to replead.'"[37]
Where a plaintiff inadequately pleads a claim and cannot offer additional
substantive information to cure the deficient pleading, granting leave to replead is
futile.[38]

## III.   APPLICABLE LAW

### A.   Invasion of Privacy

Section 50 of New York Civil Rights Law forbids the "use[] for
advertising purposes, or for the purposes of trade, the name, portrait or picture of
any living person without having first obtained the written consent of such person .
. . ."[39]  Section 51 authorizes a private cause of action for both injunctive relief to,
and damages arising from, the use of material declared unlawful by Section 50 (a
"Section 51 claim").[40]  A Section 51 claim "must demonstrate each of four
elements: (1) usage of plaintiff's name, portrait, picture, or voice, (2) within the
state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's

---

[37]     *Schindler v. French*, 232 Fed. App'x 17, 19 (2d Cir. 2007) (quoting
*Cortec Indus., Inc. v. Sum Holding L.P.*, 949 F.2d 42, 48 (2d Cir. 1991)).

[38]     *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

[39]     N.Y. Civ. Rights Law § 50.

[40]     *See id.* § 51.

8

written consent."[41]

Under New York law, the statute of limitations begins to run when a claim accrues.[42]  "A tort claim accrues upon the occurrence of the last event necessary to give rise to a claim, generally at the time of injury."[43]  New York courts apply the single publication rule to Section 51 claims, according to which the cause of action "accrues on the date the offending material is first published."[44] The statute of limitations for invasion of privacy is one year.[45]  However, republication of the offending material refreshes the limitations period.[46] Republication "occurs upon a separate aggregate publication from the original, on a different occasion, which is not merely 'a delayed circulation of the original

---

[41]     *Molina v. Phoenix Sound, Inc.*, 747 N.Y.S.2d 227, 230 (1st Dep't 2002).

[42]     *See Ely-Cruikshank Co., Inc. v. Bank of Montreal*, 81 N.Y.2d 399, 402 (1993).

[43]     *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen Theater Produktion GmbH & Co.,* 150 F. Supp. 2d 566, 572-73 (S.D.N.Y. 2001).

[44]     *Nussenzweig v. DiCorcia*, 9 N.Y.3d 184, 188 (2007) (citing *Gregoire v. G.P. Putnam's Sons*, 298 N.Y. 119, 125-26 (1948)).

[45]     *See* N.Y. Civil Practice Law & Rules ("CPLR") § 215(3).

[46]     *See Rinaldi v. Viking Penguin, Inc.*, 52 N.Y.2d 422, 434-35 (1981).

edition.'"[47]  Factors for republication include whether the subsequent publication "has been modified in form or in content" and "whether the defendant has control over the decision to republish."[48]  However, "[t]he republication exception has been applied most frequently 'where the subsequent publication is intended to and actually reaches a new audience.'"[49]

### B.    Fraudulent Inducement

The elements of a fraud claim are: "(1) a material misrepresentation or omission of fact (2) made by defendant with knowledge of its falsity (3) and intent to defraud; (4) reasonable reliance on the part of the plaintiff; and (5) resulting damage to the plaintiff."[50]  A claim for fraudulent inducement must satisfy the same elements.[51]

---

[47]    *Firth v. State*, 98 N.Y.2d 365, 371 (2002) (quoting *Rinaldi*, 52 N.Y.2d at 435).

[48]    *Hoesten v. Best*, 821 N.Y.S.2d 40, 46 (1st Dep't 2006) (quotation marks and citations omitted).

[49]    *Id.* (quoting *Firth*, 98 N.Y.2d at 371).

[50]    *Crigger v. Fahnestock & Co.*, 443 F.3d 230, 234 (2d Cir. 2006). *Accord Eurycleia Partners, LP v. Seward & Kissel, LLP*, 12 N.Y.3d 553, 559 (2009) ("The elements of a cause of action for fraud require a material misrepresentation of a fact, knowledge of its falsity, an intent to induce reliance, justifiable reliance by the plaintiff and damages.").

[51]    *See Urstadt Biddle Props., Inc. v. Excelsior Realty Corp.*, 885 N.Y.S.2d 510, 512 (2d Dep't 2009) (citations omitted) ("The elements of a cause of action alleging fraud in the inducement are representation of a material existing

## IV.   DISCUSSION

### A.   The Section 51 Claim

#### 1.   Statute of Limitations

Huntington argues that under the single publication rule, plaintiffs'

Section 51 claim accrued when the Commercial was first broadcast in 2012.[52]

Thus, according to Huntington, the one-year statute of limitations barred plaintiffs'

claims well before they filed suit in 2015.[53]

Huntington's argument misconstrues the controlling precedent.

Huntington cites to a "long string of New York cases" as support for the contention

that plaintiffs' Section 51 claim accrued upon the first broadcast of the Commercial

in 2012.[54]   Yet none of these cases involves a circumstance where the harmed

individuals gave written consent to the initial publication.

For example, in *Cuccioli v. Jekyll & Hyde Neue Metropol Bremen*

*Theater Produktion GmbH & Co.*, an American actor asserted a Section 51 claim

---

fact, falsity, scienter, reliance, and injury.").

[52]   *See* Defendants' Memorandum of Law in Support of Motion to Dismiss ("Def. Mem.") at 8.

[53]   *See id.* at 5-8.

[54]   *See id.* at 6-8.

against a German company for selling CDs containing the actor's image.[55] However, "[t]he parties agree[d] that the defendant never obtained written consent from the plaintiff to use his likeness."[56]  Accordingly, the court held the actor's injury – and the corresponding accrual of his Section 51 claim – occurred upon the first publication of the CD.[57]

Here, in contrast, plaintiffs readily admit that they consented to Huntington airing the Commercial in 2012.[58]  The initial broadcast of the Commercial in 2012 therefore cannot have been an invasion of privacy.  Rather, the Commercial only became an invasion of privacy after plaintiffs' consent expired.[59]  Although plaintiffs are unsure of the precise period of time to which they consented to the publication of the Commercial, they are adamant that they

---

[55]   *See* 150 F. Supp. 2d at 568.

[56]   *Id.*

[57]   *See id.* at 572-73.

[58]   *See* Compl. ¶¶ 16, 18-21.

[59]   *See Welch v. Mr. Christmas Inc.*, 57 N.Y.2d 143, 148 (1982) (citations omitted) ("The right to withhold consent to a use includes the right to limit the period within which the consent remains in effect.  Within the meaning and purpose of [Section 51], use after expiration of the effective period of consent is no less an invasion of privacy than is use without consent.").

never agreed to allow Huntington to air the Commercial indefinitely.[60]  Under New

York law, "where the written consent to use plaintiff's name or picture for

advertising or trade purposes has expired . . . the plaintiff may seek damages or

other relief under [Section 51], even though he might properly sue for breach of

contract."[61]  Because plaintiffs are unsure of the precise period of consent, any

argument for dismissal based on the statute of limitations is necessarily premature,

at least until the releases are produced.[62]

>            Moreover, even if plaintiffs' Section 51 claim accrued upon the first

broadcast of the Commercial in 2012, plaintiffs' allegations create a reasonable

inference of republication within one year of filing this action.  The Commercial

---

[60]      *See* Compl. ¶¶ 16, 18, 29-30.

[61]      *Stephano v. News Grp. Publ'ns Inc.*, 64 N.Y.2d 174, 183 (1984)
(citing *Welch*, 57 N.Y.2d 143).

[62]      Huntington attaches to their moving papers what appears to be
Holliday's signed release. *See* 12/1/11 Personal Release, Ex. 2 to 3/23/15
Declaration of Thomas O. Johnston, Esq. in Support of Motion to Dismiss
Plaintiffs' Amended Complaint ("Johnston Decl.").  While a court may consider a
document extraneous to the complaint in deciding a motion to dismiss, before such
a document becomes the basis of dismissal it must be clear that "'no dispute exists
regarding the authenticity or accuracy of the document.'" *DiFolco*, 622 F.3d at 111
(quoting *Faulkner*, 463 F.3d at 134).  Because plaintiffs dispute the authenticity of
this release (which in any event only applies to one of the plaintiffs), it is
inappropriate to consider it at this time. *See* Plaintiffs' Memorandum of Law in
Opposition to Defendants' Motion to Dismiss Amended Complaint ("Opp. Mem.")
at 1 n.1.

aired on a television station in New York for the first time on February 10, 2014.[63]

Huntington contends that there was no republication on that date because the

Commercial was never modified or altered from its original form – one of the

factors for republication.[64]  However, under New York law "[t]he republication

exception has been applied most frequently where the subsequent publication is

intended to and actually reaches a new audience."[65]  While any inquiry into

whether the February 10, 2014 broadcast constitutes a republication is fact-

intensive,[66] the Complaint gives rise to a plausible inference that airing the

Commercial on a new television station had the intention and effect of reaching a

new audience.  Thus, assuming that the Commercial was republished on February

10, 2014, the limitations period was refreshed on that date, rendering plaintiffs'

Section 51 claim timely regardless of whether the original publication accrued

more than one year prior to filing this action.

### 2.     Publications Outside of New York

---

[63]     *See* Compl. ¶ 31.

[64]     *See* Defendants' Memorandum of Law in Further Support of Motion
to Dismiss Amended Complaint ("Reply Mem.") at 3-4. *See also supra* notes 36-
37 and accompanying text.

[65]     *Hoesten*, 821 N.Y.S.2d at 46 (quotation marks omitted).

[66]     *See, e.g.*, *Rinaldi*, 52 N.Y.2d at 434-35.

Huntington also seeks dismissal of plaintiffs' claims arising from broadcasts outside of New York.[67]  Although plaintiffs repeatedly assert that the Commercial has aired in several markets within New York state,[68] they also seek relief for broadcasts of the Commercial in out-of-state markets.[69]

Huntington relies on a single federal district court decision in support of dismissal.[70]  In *Cuccioli*, the court concluded that out-of-state privacy violations are not actionable under Section 51.[71]  However, *Cuccioli* is inapposite because it involved a claim for exclusively out-of-state invasions of privacy – specifically, the case involved a German recording company that produced a CD in Germany and marketed the CD to audiences in Germany.[72]   Here, by contrast, neither party

---

[67]     *See* Def. Mem. at 10-11.

[68]     *See* Compl. ¶¶ 18, 22, 30-31.

[69]     *See id.* ¶¶ 30, 34, 36-38.

[70]     *See* Def. Mem. at 11.

[71]     *See* 150 F. Supp. 2d at 575.

[72]     *See id.* at 576 ("The only suggestion that the [materials were] promoted in New York . . . is plaintiff's unsupported assertion that there was a hyperlink from the New York production's web site to defendant's web site.").  A subsequent federal district court decision reached a similar conclusion regarding Section 51, but that case also involved exclusively out-of-state violations. *See Pearce v. Manhattan Ensemble Theater, Inc.*, No. 06 Civ. 1535, 2009 WL 3152127, at *9 (S.D.N.Y. Sept. 30, 2009) ("[T]he only use of plaintiff's name or image within New York was the creation of materials that were only intended for and distributed to an audience outside of New York.").

disputes that the Commercial has aired both within New York and in other markets across the country.

Moreover, there is reason to doubt whether the *Cuccioli* court's interpretation of Section 51 would still be adopted by New York courts. A federal court sitting in diversity and interpreting state law must "'predict how the forum state's highest court would decide the issue[].'"[73] The *Cuccioli* court relied on two New York trial court decisions and two intermediate appellate court decisions as support for its conclusion that Section 51 does not apply to out-of-state privacy violations.[74] Both of the intermediate appellate court cases were decided prior to the publication of the influential Restatement (Second) of Torts ("Restatement").[75] More importantly, the decision in *Cuccioli* predates the New York Court of Appeals' recent explanation of the purposes behind both Section 51 and the single publication rule, and therefore fails to provide adequate guidance on how New

---

[73]     *Giuffre Hyundai, Ltd. v. Hyundai Motor America*, 756 F.3d 204, 209 (2d Cir. 2014) (quoting *DiBella v. Hopkins*, 403 F.3d 102, 111 (2d Cir. 2005)).

[74]     *See Cuccioli*, 150 F. Supp. 2d at 575 n.45.

[75]     *See Reilly v. Rapperswill Corp.*, 377 N.Y.S.2d 488 (1st Dep't 1975); *Rosemont Enters., Inc. v. Urban Sys., Inc.*, 345 N.Y.S.2d 17 (1st Dep't 1973). *See also* Restatement (Second) of Torts (1977) ("Restatement").

16

York's highest court would resolve this issue.[76]

Section 577A(4) of the Restatement provides that "[a]s to any single publication, (a) only one action for damages can be maintained [and] (b) all damages suffered in all jurisdictions can be recovered in the one action . . . ." In *Firth v. State*, the New York Court of Appeals cited the Restatement favorably, noting that "[t]he single publication rule . . . allow[s] the collection of *all damages in one case commenced in a single jurisdiction*."[77] This language clearly indicates that the Court of Appeals endorses the Restatement standard and would accordingly hold that the single publication rule results in "only one cause of action for the publication," allowing the harmed individual to "include in [a] single suit all damages resulting anywhere from the single aggregate publication."[78]

Further, the Court of Appeals explained that the purpose of the single publication rule is to prevent "a multiplicity of actions, leading to potential

---

[76]     As the Second Circuit explained, a federal court sitting in diversity is "'not strictly bound by state intermediate appellate courts,' [but] will look to their decisions unless 'convinced by other persuasive data that the highest court of the state would decide otherwise.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 739 F.3d 45, 48 (2d Cir. 2013) (quoting *West v. American Tel. & Tel. Co.*, 311 U.S. 223, 237 (1940)).

[77]     98 N.Y.2d at 370 (emphasis added) (citing Restatement § 577A cmt. d).

[78]     Restatement § 577A cmt. e.

harassment and excessive liability, and draining of judicial resources."[79] Dismissing plaintiffs' out-of-state claims – and consequently exposing Huntington to multiple potential actions and the possibility of excessive liability in other jurisdictions – would therefore thwart the underlying purpose of the single publication rule.  In light of the foregoing, I conclude that the New York Court of Appeals would permit the consolidation of in-state and out-of-state claims into a single cause of action.

### B.    Fraudulent Inducement

The Complaint states that Huntington Centers fraudulently induced plaintiffs to "forego asserting their legal rights with respect to the Commercial," as plaintiffs would have filed suit on their Section 51 claim in June 2014 if not for Huntington Centers' misrepresentations.[80]  New York law is "unclear 'as to whether an action can be maintained against one who fraudulently induces another to forego enforcement of a legal remedy.'"[81]  The New York Court of Appeals has never squarely addressed the question and only one Appellate Division has done

---

[79]    *Firth*, 98 N.Y.2d at 369-70 (citing *Keeton v. Hustler Mag., Inc.*, 465 U.S. 770, 777 (1984); Restatement § 577A cmt. d).

[80]    Compl. ¶¶ 42-43.

[81]    *Netto v. Rastegar*, No. 12 Civ. 4580, 2012 WL 4336167, at *7 (S.D.N.Y. Sept. 20, 2012) (quoting 60A N.Y. Jur. 2d *Fraud and Deceit* § 156 (2012)).

so.[82]  Thus, this is an issue in which a federal court exercising diversity jurisdiction has to predict how the New York Court of Appeals would rule on the issue if squarely presented.

To begin, if the Section 51 action is not time-barred (as I concluded in my earlier discussion) there can be no claim for fraudulent inducement, as no damages flowed to plaintiffs from their delay in filing suit at an earlier date.  If, however, it turns out following discovery of the releases that the actions are indeed time-barred, then the question of whether an independent action for fraudulent inducement to delay filing the lawsuit can be raised.

While I just noted that the New York Court of Appeals has not squarely addressed the issue, it alluded to it in *dicta* in *Brick v. Cohn-Hall-Marx Co.*[83]  The dispute in *Brick* arose out of an alleged breach of contract, but the plaintiffs sued for fraud because they did not discover the breach until after the statute of limitations for contract actions had run.[84]  The court explained that "in applying the statute of limitations we look for the reality, and the essence of the

---

[82]     *See Dupuis v. Van Natten*, 402 N.Y.S.2d 242, 243 (3d Dep't 1978) ("Where failure to commence an action before the expiration of the [] statute of limitations is due to fraud practiced upon the plaintiff, a cause of action will lie for the loss sustained in consequence thereof.").

[83]     276 N.Y. 259 (1937).

[84]     *See id.* at 261-63.

action and not its mere name."[85]  The court dismissed the case as time-barred,

holding that even if plaintiffs could prove that the defendants made false

statements, plaintiffs' right of recovery was governed exclusively by the provisions

in the contract.[86]  The plaintiffs alleged fraud solely "to avoid the statute of

limitations" and therefore failed to change the fundamental nature of the action

from breach of contract to fraud for the purpose of the statute of limitations.[87]

Nonetheless, the court went on to say the following – which is clearly dicta:

> If there were fraud extraneous to the contract, lulling the
> plaintiffs into the belief that the money had been paid or
> would be paid, a different situation might arise.   The
> plaintiffs in such a case would have a cause of action for
> the damages caused by the fraud in inducing them to let the
> statute of limitations arise.   For instance, if before the
> statute expired the defendant had assured the plaintiffs that
> it had already sent a check or had paid, and the plaintiffs,
> relying upon such assurance, let the time elapse in which
> suit could be brought, we would then have an instance of
> extraneous fraud not in any way growing out of the
> contract.  Such is not the case.[88]

Here, Huntington Centers' alleged misrepresentation is of a very

different nature.  One defendant merely left a voicemail explaining to Comolli –

---

[85]   *Id.* at 264.

[86]   *See id.* at 263-64.

[87]   *Id.* at 264.

[88]   *Id.*

only one of the plaintiffs – that her release allowed Huntington to air the Commercial in perpetuity.  Relying on this (but not having possession of the release) all of the plaintiffs decided not to sue.  After waiting many months for Huntington to send a copy of the alleged release, plaintiffs decided to sue. Huntington Centers' alleged misrepresentation arose directly from the terms of the agreement.  It is not extraneous to that agreement.  Plaintiffs were parties to that agreement.  They made their own decision not to sue and must accept the consequences of that decision.  There is no allegation that the June 2014 statement was made to lull or mislead plaintiffs for the purpose of causing their claim to become time-barred.

The real problem is that if the Court's analysis of the republication rule is flawed, then the action was likely time-barred long before the alleged misrepresentation.  The releases were signed in December 2011.  Plaintiffs admit that they agreed that the Commercial could be aired for one year – i.e., through late 2012 or early 2013 (depending when it was first aired).  Any publication after that would have caused an invasion of privacy – the claim that plaintiffs now assert. But this claim, as noted above, carries a one-year statute of limitations.  Thus, any claim brought after 2014 would be time-barred.  This action was filed on January 20, 2015.  Thus, if my earlier ruling is erroneous, then the claim was time-barred

well before the alleged misrepresentation.

        If it turns out in the course of discovery that the releases allowed the Commercial to air for *two years*, rather than the one year that plaintiffs seem to remember, then the unauthorized airing of the Commercial may not have happened until early 2014.  In that event, the alleged misrepresentation may indeed have caused the plaintiffs to miss the one-year window in which to timely bring suit.  In that event, plaintiffs can assert a defense of equitable estoppel based on defendants' alleged misrepresentation.[89]  I conclude that given the weight of authority throughout the country,[90] the New York Court of Appeals would not allow an independent claim for fraudulent inducement given the facts presented

---

[89]     Plaintiffs have already laid the groundwork for raising equitable estoppel at the proper time. *See* Opp. Mem. at 17-19. *See also Dillman v. Combustion Eng'g, Inc.*, 784 F.2d 57, 61 (2d Cir. 1986) (citation and quotation marks omitted) ("[E]quitable estoppel is invoked in cases where the plaintiff knew of the existence of his cause of action but the defendant's conduct caused him to delay bringing his lawsuit.").  In order to determine whether equitable estoppel applies, the court must evaluate plaintiffs' contention that Huntington Centers' misrepresentations lulled them into delaying filing suit in light of all of the circumstances. *See Kavowras v. New York Times Co.*, 328 F.3d 50, 56-57 (2d Cir. 2003).

[90]     *See generally* Thomas J. Griffin, Annotation, *Fraud and Deceit: Liability in Damages for Preventing Bringing of Action Before Its Being Barred by Statute of Limitations*, 33 A.L.R.3d 1077 (1970) (citing cases where courts have refused to recognize a cause of action for fraud resulting in the delayed enforcement of a legal remedy, but also noting that some courts have recognized such claims based on the particular facts presented).

here.

Plaintiffs' fraudulent inducement claim is therefore dismissed without leave to replead.

## V.    CONCLUSION

For the foregoing reasons, Huntington's motion to dismiss is GRANTED as to plaintiffs' fraudulent inducement claim and DENIED as to plaintiffs' claim for invasion of privacy.  The Clerk of Court is directed to close these motions [Docket No. 17 and Docket No. 9].  A conference is scheduled for July 10, 2015 at 4:00 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           June 25, 2015

23

**-Appearances-**

**For Plaintiffs:**

Rhett O. Millsaps, II, Esq.
Law Office of Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 355-2816

**For Defendants Huntington Learning Centers, Inc., Huntington Learning Corporation, and Huntington Mark, LLC:**

Thomas O. Johnston, Esq.
Porzio, Bromberg & Newman, P.C.
156 West 56th Street
New York, NY 10019
(212) 265-6888

**For Defendant Huntington Advertising Fund, Inc.:**

David A. Piedra, Esq.
Joseph T. Moldovan, Esq.
Morrison Cohen LLP
909 Third Avenue, 27th Floor
New York, NY 10022
(212) 735-8775