UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------ X

DINA ANN COMOLLI, CHRISTINE
HOLLIDAY, and SANDRA WILLIAMS,

        Plaintiffs,

- against -

HUNTINGTON LEARNING CENTERS,
INC., HUNTINGTON LEARNING
CORPORATION, HUNTINGTON MARK,
LLC, HUNTINGTON ADVERTISING
FUND, INC., and NEW YORK ADI COOP
CORP.,

        Defendants.

------------------------------------------------------------ X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 4/13/16

**OPINION AND ORDER**

15-cv-1204 (SAS)

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

      Plaintiffs Dina Ann Comolli, Christine Holliday, and Sandra Williams bring this action against defendants Huntington Advertising Fund, Inc. ("HAF"), Huntington Learning Centers, Inc., Huntington Learning Corporation, and Huntington Mark, LLC (collectively "Huntington"). Plaintiffs allege that Huntington broadcast their images — captured by their consensual appearance in a commercial — without their written consent in violation of Section 51 of the New York Civil Rights Law. Defendants now move for summary judgment on the

-1-

ground that discovery has revealed that plaintiffs signed written releases — giving Huntington express authority to broadcast plaintiffs' images in the commercial — prior to plaintiffs' participation in the commercial.[1] For the following reasons, defendants' motions are GRANTED.

## I. BACKGROUND

The following facts are not in dispute. Huntington Learning Centers, Inc. is a franchisor of learning centers around the country; Huntington Learning Corporation owns and operates learning centers in New York; Huntington Mark, LLC owns intellectual property used by Huntington Learning Centers, Inc. and its franchises; and New York ADI Coop Corp. purchases advertising for Huntington franchises.[2] HAF is a special purpose entity that collects a portion of the revenues generated by the Huntington franchisor and franchisees, and then disburses those funds for advertising expenditures.[3] Plaintiffs Dina Ann Comolli, Christine Holliday, and Sandra Williams are actresses who performed in a television commercial for Huntington, depicting three mothers discussing their children's

---

[1] HAF also moves on the separate ground that it did not *use* plaintiffs' images in connection with advertising as required for liability under Section 51.

[2] *See* Huntington's Statement of Undisputed Material Facts in Support of Its Motion for Summary Judgment ("Huntington 56.1") ¶ 1.

[3] *See* 1/13/16 Declaration of Laura Gehringer, a member of HAF, ¶¶ 2-3.

academic performance in a coffee shop.[4]

In 2011, Mint Advertising ("Mint"), a New Jersey based advertising agency, was hired to produce a "rebranding" advertising campaign for Huntington.[5] Mint hired Kinetiscope, a television production company, to produce four television commercials for the campaign, including the commercial in which plaintiffs appeared.[6] In response to a subpoena, Greg Slagle, a principal of Kinetiscope and the producer of the commercials, produced copies, but not originals, of thirty-nine release forms that Kinetiscope had obtained in connection with the production of the four commercials in perpetuity.[7] In general terms, the releases permit Huntington to use plaintiffs' images in the television commercial. There is a single release form for each plaintiff, and each plaintiff has identified the handwriting on the relevant release form as her own.[8]

Each plaintiff states that she does not remember signing a release

---

[4]  See Huntington 56.1 ¶ 2.

[5]  See id. ¶ 3.

[6]  See id. ¶ 4.

[7]  See id. ¶¶ 5-6. The releases are attached as Exhibit A to the January 13, 2016 Declaration of Greg Slagle.

[8]  See Huntington 56.1 ¶¶ 7-9.

form.[9] Holliday also indicates that she

> is skeptical that th[e] purported copy [of the release with her signature on it] is authentic, however, because she does not recall interacting with [one of the producers,] Alicia Sim[,] on set or what Ms. Sim looked like, she does not recall ever seeing or signing the purported release, and she as a rule does not sign perpetual releases for television commercials because it would be detrimental to her career.[10]

Each release form is a single page with the words "PERSONAL RELEASE" at the top. Much like typical business correspondence, there is a line for the date, then Mint's address, and the salutation "Ladies and Gentlemen." The text of the release states that:

> For good and valuable consideration including participation in this commercial, and/or still photography, I hereby grant to you and your respective licensees, successors and assigns the absolute right and permission to photograph, publish, record, broadcast, exhibit, digitize, display, telecast, copyright, use and otherwise exploit perpetually throughout the world for all media now or hereafter known or devised, my name, likeness, recorded voice, performance, picture, caricature, nickname and any material furnished by me on and in connection with the use exploitation and promotion of your television commercial(s) or products connected therewith. I grant you full power to assign said rights contained herein to anyone at your sole option.

---

[9] *See* Plaintiffs' Counterstatement to the Rule 56.1 Statement of Defendants Huntington Learning Centers, Inc., Huntington Learning Corporation, Huntington Mark, LLC, and New York ADI Coop Corp. ¶¶ 8 (Holliday), 18-19 (Williams), 25 (Comolli).

[10] *Id.* ¶ 8.

> I shall have no right of approval, no claim to compensation, and claim (including, without limitation, claims based upon invasion of privacy, defamation, or right of publicity) arising out of any use, alteration, distortion, or illusionary effect or use in any composite form of my voice, picture, image or likeness.
>
> As between us, you are the sole owner of all rights in the commercial recording and you rely on my assurance that I am free lawfully to grant the right above set forth.

Just after the text is the complimentary closing, "Very Truly yours," and then a blank line for the actor's name, under which it is written "(print name clearly)." This is followed by blank lines for an address and telephone number. Finally, there is a blank line under which it is written "[i]f signatory is under 21, the parent or guardian must also sign above to signify agreement."

Each plaintiff printed her name below "Very Truly yours" on her respective release form; in addition, Holliday wrote her name in cursive on the bottom line above "[i]f signatory is under 21, the parent or guardian must also sign above to signify agreement."[11] After the shoot, each plaintiff sent Kinetiscope an invoice for her work on the commercial, received a check for $500 for that work, endorsed the check, and cashed or deposited the check in her bank account.[12]

---

[11] Plaintiffs' Memorandum of Law in Opposition to the Motion for Summary Judgment of Defendants Huntington Learning Center, Inc., Huntington Learning Corporation, Huntington Mark, LLC, and New York ADI Coop Corp. ("Pl. Opp."), at 1-2, 5-7.

[12] *See* Huntington 56.1 ¶¶ 10-15.

## II. LEGAL STANDARD

Summary judgment is appropriate where, "viewing the record in the light most favorable to the non-moving party . . . 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'"[13] "In making this determination . . . we resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought."[14] "A fact is material if it might affect the outcome of the suit under the governing law, and an issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."[15]

"The moving party bears the burden of showing the absence of a genuine dispute as to any material fact."[16] To defeat a motion for summary judgment, the non-moving party must "'do more than simply show that there is some metaphysical doubt as to the material facts, and may not rely on conclusory

---

[13] *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (quoting Fed. R. Civ. P. 56(a)) (quotation marks and citation omitted).

[14] *Simpson v. City of New York*, 793 F.3d 259, 265 (2d Cir. 2015) (quotation marks and citation omitted).

[15] *Windsor v. United States*, 699 F.3d 169, 192 (2d Cir. 2012), *aff'd*, 133 S. Ct. 2675 (2013) (quotation marks, citation, and alterations omitted).

[16] *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 486 (2d Cir. 2014) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)).

allegations or unsubstantiated speculation.'"[17] "If the non-moving party has the burden of proof on a specific issue, the movant may satisfy its initial burden by demonstrating the absence of evidence in support of an essential element of the non-moving party's claim."[18]

"'The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists.'"[19] "'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.'"[20]

### III. APPLICABLE LAW

Section 50 of New York Civil Rights Law forbids the "use[] for advertising purposes, or for the purposes of trade, the name, portrait or picture of any living person without having first obtained the written consent of such person .

---

[17] *Robinson*, 781 F.3d at 44 (quoting *Brown v. Eli Lilly & Co.*, 654 F.3d 347, 358 (2d Cir. 2011)).

[18] *Chen v. New Trend Apparel*, 8 F. Supp. 3d 406, 430 (S.D.N.Y. 2014) (citing *Celotex v. Catrett*, 477 U.S. 317, 325 (1986) (further citations omitted)).

[19] *Rogoz v. City of Hartford*, 796 F.3d 236, 245 (2d Cir. 2015) (quoting *Kaytor v. Electric Boat Corp.*, 609 F.3d 537, 545 (2d Cir. 2010)).

[20] *Crawford*, 758 F.3d at 486 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

. . ."[21] Section 51 authorizes a private cause of action for both injunctive relief to, and damages arising from, the use of material declared unlawful by Section 50 (a "Section 51 claim").[22] A Section 51 claim "must demonstrate each of four elements: (1) usage of plaintiff's name, portrait, picture, or voice, (2) within the state of New York, (3) for purposes of advertising or trade, (4) without plaintiff's written consent."[23]

## IV. DISCUSSION

Lack of written consent is an essential element of a Section 51 claim. During discovery, defendants located copies of written releases relating to the commercial for each plaintiff. Plaintiffs attempt to raise a genuine dispute of material fact with respect to the releases, and also argue that the releases should not be considered because they are not admissible into evidence.

### A. There Is No Genuine Dispute of Material Fact as to Whether Plaintiffs Executed the Releases

Plaintiffs argue that the there is a genuine dispute of material fact as to whether Comolli and Williams intended to provide written consent on the ground

---

[21] N.Y. Civ. Rights Law § 50.

[22] *See id.* § 51.

[23] *Molina v. Phoenix Sound, Inc.*, 747 N.Y.S. 2d 227, 230 (1st Dep't 2002).

that they printed their names and addresses on the release form, but did not sign them.[24] However, under New York's General Construction law, a printed name is no less a signature than a name written in cursive: "[t]he term signature includes any memorandum, mark, or sign, written, printed, stamped, photographed, engraved or otherwise placed upon any instrument or writing with intent to execute or authenticate such instrument or writing."[25] Given the structure and content of the releases, printing one's name under "Very Truly yours" constitutes a signature.

Under New York's General Construction Law, what matters is not whether Comolli and Williams used print or cursive, but whether they intended to sign the release.[26] In assessing a contracting party's intent, courts look to objective manifestations and not to unexpressed, subjective views.[27] Here, Comolli and

---

[24]     *See* Pl. Opp. at 3-7.

[25]     General Construction Law § 46.

[26]     Plaintiffs make the claim that "Laura Gehringer, defendants' sole corporate designee witness, admitted under oath that a fully executed release for the . . . commercials . . . should include the actor's printed name, address, and phone number *as well as the actor's signature*." Pl. Opp. at 5 (emphasis in original). However, as demonstrated in defendants' brief, Gehringer's testimony does not support plaintiffs' claim. *See* Defendants' Reply Memorandum of Law in Further Support of Motion for Summary Judgment Against Plaintiffs ("Def. Reply"), at 10.

[27]     *See Manhattan Theatre Club, Inc. v. Bohemian Benev. & Literary Ass'n of City of New York*, 64 N.Y.2d 1069, 1070 (1985); 1 Richard A. Lord, Williston on Contracts § 4:1 (4th ed. 2007) ("In the formation of contracts, . . . it

Williams both printed their names in the exact place required by the plain terms of the document, on the signature line beneath the typed "Very Truly Yours" complimentary closing. They each followed the straightforward, simple directions on the document to print their names. They then participated in the shoot and later sent invoices for their work. After they received checks for $500, they endorsed and cashed them. While Comolli and Williams claim that they did not intend to sign the releases when they printed their names, they fail to present objective evidence that supports their argument. Thus, a review of the objective evidence in the record demonstrates that there is no genuine dispute of material fact about whether Comolli and Williams intended to sign the releases.[28]

---

was long ago settled that secret, subjective intent is immaterial, so that mutual assent is to be judged only by overt acts and words rather than by the hidden, subjective or secret intention of the parties."); 17A Am. Jur. 2d Contracts § 31 ("The court's inquiry in determining whether a contract exists is whether a reasonable person would, based upon the objective manifestation of assent and all the surrounding circumstances, conclude that the parties intended to be bound by the contract. The court looks not to the parties' subjective intent but rather to the objective evidence of their intent.").

[28] Because Holliday both printed and signed her name in cursive on the release, plaintiffs offer a different argument relating to her release. That argument derives from the fact that Williams became a member of the SAG-AFTRA union in 2012. Plaintiffs claim that "even if the purported written consent with Ms. Holliday's signature were valid, it would be immaterial if defendants did not have Ms. Williams' valid written consent, because defendants would have been required to 'unionize' the Commercial and re-negotiate with all three plaintiffs as SAG-AFTRA union members after Ms. Williams became a union member in 2012." Pl. Opp. at 1-2. In making this argument, plaintiffs rely on the testimony of their

### B. The Copies of the Releases Submitted by Huntington Have Been Appropriately Authenticated

Plaintiffs next argue that the releases are inadmissible because they are duplicates that have not been properly authenticated.[29] However, the "evidence [is] sufficient to support a finding that the [releases are] what [defendants] claim[]" them to be.[30] *First*, each of the plaintiffs has admitted that the relevant release bears her own handwriting. *Second*, Greg Slagle, the records custodian for Kinetiscope, has submitted an affidavit stating that the plaintiffs' personal releases are true copies of the releases his company obtained for the commercial. Finally, Slagle produced the releases in this litigation pursuant to a subpoena, and confirmed their authenticity at his deposition. This foundation amply satisfies Rule 901's authentication requirement.[31]

---

purported expert, David Coackly, even though Coackly testified that he had no experience with the process of "unionizing" a non-union commercial. *See* Def. Reply at 12. Plaintiffs' argument is untenable. It is not supported by citation to any authority. Moreover, it rests upon the false premise, just rejected by this Court, that Williams did not sign the release.

[29] *See* Pl. Opp. at 12-19.

[30] Fed. R. Evid. 901(a).

[31] *See* Fed. R. Evid. 901(b) (stating that a document can be authenticated by, among other things, the testimony of a witness with knowledge); *United States v. Dhinsa*, 243 F.3d 635, 658 (2d Cir. 2001) (explaining that the authentication of documents in federal court "does not erect a particularly high hurdle").

Plaintiffs argue that because Federal Rule of Evidence 1002 requires originals of documents, the copies submitted by defendants should not be allowed into evidence. Plaintiffs concede that Federal Rule of Evidence 1003 permits the admission of duplicates, but argue that the Rule is subject to two exceptions, and that both of those exceptions apply here.[32] Under Rule 1003, a duplicate is not admissible if "a genuine question is raised as to the authenticity of the original" or if "in the circumstances it would be unfair to admit the duplicate in lieu of the original."

However, plaintiffs have failed to raise a colorable argument as to the existence of either condition. Holliday's purported doubt about the authenticity of her release — which is based on her claims that she did not recall signing it or seeing one of the producers on the set, and that she would never sign a release of rights in perpetuity — is far too thin a reed to support such a claim.[33] Nor have plaintiffs established any unfairness. Under Rule 1004(a), "[a]n original is not required and other evidence of the content of a writing, recording, or photograph is admissible if: (a) all the originals are lost or destroyed, and not by the proponent

---

[32]   *See* Pl. Opp. at 12-13.

[33]   Holliday testified that while she does not recall signing the document, she also does not believe that Kinetiscope forged her signature. *See* Def. Reply at 5-7.

acting in bad faith." Plaintiffs admit that Huntington "could not locate the originals after an extensive search[,]"[34] and there is no evidence in the record that the documents were lost or destroyed as a result of Huntington acting in bad faith.[35] Accordingly, plaintiffs' arguments that this Court should not consider the releases on this motion are rejected.

## V. CONCLUSION

For the foregoing reasons, defendants' motions for summary judgment are GRANTED. The Clerk of the Court is directed to close these motions (Dkt. Nos. 55 and 60) and this case.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:     New York, New York
           April 13, 2016

---

[34]  *Id.* at 14.

[35]  Because the holdings in this case are dispostive of the claim against HAF, I do not consider HAF's alternative argument that summary judgment should be granted in its favor because plaintiffs cannot establish that HAF *used* the commercial as required by Section 51.

**-Appearances-**

**For Plaintiffs:**

Rhett O. Millsaps, II, Esq.
Law Office of Rhett O. Millsaps II
745 Fifth Avenue, Suite 500
New York, NY 10151
(646) 355-2816

**For Defendants Huntington Learning Centers, Inc., Huntington Learning Corporation, and Huntington Mark, LLC:**

Thomas O. Johnston, Esq.
Porzio, Bromberg & Newman, P.C.
156 West 56th Street
New York, NY 10019
(212) 265-6888

**For Defendant Huntington Advertising Fund, Inc.:**

David A. Piedra, Esq.
Joseph T. Moldovan, Esq.
Morrison Cohen LLP
909 Third Avenue, 27th Floor
New York, NY 10022
(212) 735-8775